# In the United States Court of Federal Claims

No. 11-129C
(Filed: January 21, 2015)

```
*************************************
                                     *
H.J. LYNESS CONSTRUCTION, INC.,      *
                                     *   Cross-Motions For Summary Judgment;
                 Plaintiff,          *   Genuine Issue of Material Fact
                                     *
      v.                             *
                                     *
THE UNITED STATES,                   *
                                     *
                 Defendant.          *
                                     *
*************************************
```

## OPINION AND ORDER

**DAMICH, Senior Judge:**

  Plaintiff, H.J. Lyness Construction, Inc. ("HJL"), seeks damages stemming from the termination for convenience by the General Services Administration ("GSA") of HJL's contract to renovate and provide security improvements to the lobby of a federal building. HJL has filed a motion for partial summary judgment for settlement costs in the amount of $563,792 associated with the termination for convenience. Defendant, The United States on behalf of GSA, ("the Government"), has filed a cross motion for complete summary judgment. The Government alleges that HJL has waived its right to seek settlement costs by executing a release of claims. In the alternative, the Government alleges that settlement costs should be limited to $30,180.59. Both motions are before the Court pursuant to Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC").

  The Court finds that HJL's continued negotiations regarding the settlement costs after the execution of the release may be sufficient to show that its claims for settlement costs are not barred. The Court further finds that the parties' action and course of conduct in this case create a genuine issue of material fact regarding whether the release constituted a full and final release of claims in exchange for final payment, or was simply one of a series of routine application forms for partial payments requested by HJL. Therefore, the Court **denies in part** Defendant's cross motion for summary judgment. The Court further holds in abeyance Plaintiff's partial motion for summary judgment for damages until liability is established.

  **I.**  **Facts**

On August 15, 2006, HJL entered into Contract No. GS05P06SLC3014 with GSA. Compl. at ¶ 2. The contract was a firm-fixed price contract in the amount of $1,830,000 for lobby renovations and security improvements to the John Weld Peck Federal Building in Cincinnati, Ohio. *Id.* The performance bond, certificate of insurance and security clearances were thereafter reviewed and approved by GSA and on November 9, 2006, GSA issued the initial notice to proceed ("NTP"). Appendix to the Defendant's Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment ("DA") 5. However, the NTP was rescinded by GSA on November 16, 2006, due to issues with the fire evacuation plan associated with the contract design. DA 159.

In 2007, HJL submitted its first pay application for its recoverable bond costs. The bond costs were reimbursed by this pay application in the amount of $14,976. DA 6-10. As part of the pay application form, a "Release of Claims" form ("release") was attached to the pay application. The release stated that HJL was "releas[ing] the United States for any and all claims arising under or by virtue of said contract or any modification or change thereof." DA 10. The release further contained space to exempt claims from the scope of the release. Harry J. Lyness, president of HJL, signed the pay application and did not exempt any claims. *Id.* According to HJL, the pay application was submitted to GSA on January 19, 2007. DA 6-9. The pay application and release of claims was signed by HJL on February 21, 2007. DA 7, 10. Because there is a discrepancy between the date of the pay application and the date of the signing, the Court assumes that the date at the top of the document indicates (approximately) when the pay application form was either sent to HJL or was sent from HJL to GSA.

In order to resolve the fire safety issues that led to the rescission of the NTP in 2006 (as mentioned above) and to proceed with construction, GSA requested that HJL install an additional door in the rear of the building. DA 13-15. To accomplish this, on September 6, 2007, GSA issued a second NTP, together with a modification. DA 11-18. HJL completed the work and submitted a second pay application in the amount of $67,427.28, for costs associated with the change order. DA 24-28. This pay application contained the same release as attached to the first pay application and again, Mr. Lyness signed the pay application and did not exempt any claims. DA 28. This application is dated March 13, 2008, and both the pay application and release of claims were signed by HJL on April 23, 2008. DA 25, 28. This claim was paid as evidenced by the handwritten notation stating "paid 4-23-08." DA 25.

On August 6, 2008, GSA again modified the contract and requested that HJL perform additional work, not to exceed $32,250. DA 29-31. The work was completed and the pay application, dated February 6, 2009, forwarded for payment on March 2, 2009, was signed by Mr. Lyness on May 6, 2009. DA 76-80, Plaintiff's Response to Cross Motion and Reply, Affidavit of Harry J. Lyness, dated August 8, 2014, Exhibit T ("Aff __.") HJL was paid in the amount of $30,940. DA 76-80. This third pay application also contained the same release as pay applications one and two. For a third time, Mr. Lyness did not exempt any claims ("May 6 release"). DA 80.

In addition to the pay applications, HJL also submitted partial requests for equitable adjustment. On November 28, 2008, HJL submitted a request in the amount of $36,782.00 for alleged unabsorbed overhead costs for the fiscal year ending December 31, 2006. DA 32-39.

HJL submitted a second request for equitable adjustment dated March 16, 2009, seeking $148,793.00 in unabsorbed overhead costs for the fiscal year ending December 31, 2007. DA 40-63. GSA denied the first request on March 30, 2009, stating that it was partial, and instructed HJL to submit a "complete final request with all supporting documentation." DA 64. The present record does not show that any action was taken on the second request either by HJL or GSA.

On April 6, 2009, GSA terminated the contract for convenience. DA 65-68. (Although Mr. Lyness signed the third pay application and the accompanying release (May 6 release) *after* the termination for convenience, he alleges that it was submitted to GSA for review *before* the termination for convenience, i.e. on March 2, 2009.) DA 76-80. On the same date, the contracting officer informed HJL that the contracting administration office would assign someone to the termination and that HJL could request the necessary settlement forms. DA 67. Specifically, the letter states:

> (h) Administrative. The contract administration office named in the contract will identify the Contract Officer who will be in charge of the settlement of this termination and who will, upon request, provide the necessary settlement forms. Matters not covered by this notice should be brought to the attention of the undersigned.

DA 67. Subsequently, on April 10, 2009, HJL requested the settlement proposal form which was transmitted to HJL eighteen days later. DA 69-70.

Approximately ten months later, on February 24, 2010, HJL contacted GSA and again requested the settlement proposal form. DA 81. In response, on February 26, 2010, the contracting officer informed HJL that GSA viewed the May 6, 2009 release (submitted along with HJL's third pay application) as a final release which closed out the project. The contracting officer did not mention the settlement process that seemingly had been started immediately upon the termination for convenience, as is evidenced by the April 6, 2009 termination of convenience letter. In response to this, Mr. Lyness objected to this view by email. *Id.*, Aff. Ex. Z. Even though the contracting officer had stated that she would not consider HJL's settlement proposal, on March 17, 2010, HJL submitted it. DA 85-90. In the settlement proposal, HJL requested $563,792 as settlement for the termination for convenience. DA 87. Then, on November 22, 2010, HJL resubmitted the termination settlement proposal to the contracting officer as a certified claim. DA 82-90. Sixty days passed following HJL's claim submission without a final decision from the contracting officer. Therefore, HJL filed this suit seeking the amount of $563,792 that it had set forth in its settlement proposal. *See generally* Compl. After the filing of the complaint, the Inspector General's office of the GSA conducted a multi-day onsite audit of HJL's settlement proposal. DA 155-170. The audit revealed that HJL was due $30,180.59. *Id.*

## II.     Procedural History

On February 8, 2011, HJL filed its complaint in this Court. Discovery commenced shortly thereafter. At the close of discovery, HJL filed a motion for partial summary judgment. In turn, the Government filed a cross motion for complete summary judgment and its response.

After full briefing, the Court ordered supplemental briefing. The parties were directed to comment on the case *Raytheon Co. v. United State*s, 96 Fed. Cl. 548 (2011), and in particular, "whether the conduct of the parties has been sufficient to vitiate the release." *Id*. at 554. The parties complied and the Court held oral argument. The motions are now ready for disposition.

### III.     Legal Standards

A motion for summary judgment will be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." RCFC 56 (c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it "might affect the outcome" of the suit; a dispute is genuine if the evidence is such that a reasonable trier of fact could find for the nonmoving party. *Id*. at 248.

The party moving for summary judgment may prevail by demonstrating via the pleadings or other materials in the record (such as depositions, documents, affidavits or declarations, stipulations, admissions, interrogatory answers, etc.) the absence of any genuine issues of material fact or by showing the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of material fact. *Id*. at 324. Any inferences that may be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Similarly, "[i]n cases in which there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984).

### IV.     Discussion

It is undisputed that attached to all three pay applications signed by HJL, HJL signed a release of claims waiving "any and all claims arising under or by virtue of said contract or any modification or change thereof." DA 10, 28, 80. It is further undisputed that all three releases contained space for HJL to exempt specific claims. *Id*. It is also undisputed that HJL did not reserve any claims on any of the pay applications. *Id*. Finally, it is undisputed that the third application release (May 6, 2009) was signed after the termination for convenience (April 6, 2009) and that GSA continued to entertain the settlement process after notifying HJL that it considered the May 6 release to be a final release that closed out the project (February 26, 2010).

Specifically and central to the Government's argument here for summary judgment is that HJL signed the last pay application and release on May [6,2009], without reserving any claims. *Id*. The release, argues the Government, is unambiguous and as such, HJL has waived any claims for settlement costs it now seeks to recover from the Government. In response to this, HJL argues that the release does not extend to the settlement costs, but instead, that the May 6,2009 release extends only to the change order work as evidenced by the parties' actions and

course of conduct. Due to this, HJL asserts, a genuine issue of material fact exists which must be resolved by trial. The Court agrees with HJL that a genuine issue of material fact exists.

Generally "a contractor that has executed a release (without a reservation of claims) is barred from seeking compensation for such claims based on events that occurred before the execution of the release." *B.D. Click Co., Inc. v. United States*, 614 F.2d 748, 756 (Ct. Cl. 1980). "Because a release is contractual in nature, it is interpreted in the same manner as any other contract term or provision." *Bell BCI Co., v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009). Only in the event of an ambiguity may the court examine extrinsic or parol evidence. *Id*. Thus, the only duty of the court is to look at the plain language of the release, and if the provisions are clear and unambiguous, the court must give it its plain and ordinary meaning. *Id*. (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed. Cir. 1996)).

However, there are times "where the conduct of the parties in continuing to consider a claim after execution of the release makes plain that the [parties] never construed the release as constituting the abandonment of the claim." *Raytheon Co.*, 96 Fed. Cl. 548, 553 (2011) (*citing J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801 (1963)). In *Raytheon*, the release at issue was dated March 7, 2001, and provided that "Raytheon . . . waives any claim and rights against the Government that it now has or may have in the future in connection with the [completed and transferred] contracts." *Id.* at 551 (quotation omitted). Raytheon submitted various claims that the Government contended were barred by the release. However, correspondence dated November 8, 2004 and January 24, 2005 "reflect[ed] the government and Raytheon's continued negotiations" concerning the claims after execution of the release. *Id.* at 553. This correspondence, the court held, was "evidence of continued negotiations . . . after the execution of the release," and "may be sufficient to show that" the claims were "not barred by the waiver of claims provisions" in the contracts, thereby precluding summary judgment on the issue. *Id.* at 554.

In the case *J.G. Watts*, relied upon in *Raytheon*, the court also held that a release could be vitiated if there were post-release negotiations. 161 Ct. Cl. 801, 806. However, unlike *Raytheon*, the court held that this legal principle did not apply based on the facts before it holding: "[T]here is nothing in the pleaded or stipulated facts which serve in any way" to demonstrate that there were post-release negotiations. *Id.* at 807. To the contrary, the court in *J.G. Watts* held that this was "the simple case of a contractor who completed his contract, and, as provided by the contract, received his final payment upon the execution of a full release, and then almost 5 years later attempts to assert claims." *Id.* Accordingly, the court held "that the release executed by the plaintiff serves to bar the prosecution of the cause of action," and granted the Government's motion for summary judgment. *Id.* at 803.

The Government avers that this case is similar to *J.G. Watts* and stands in sharp contrast to *Raytheon*. Here, the Government argues, as in *J.G. Watts*, there is no evidence of negotiations concerning the claim at issue after execution of the operative release. The release was signed by HJL on May 6, 2009, which was after the April 6, 2009 termination for convenience. Hence, the release bars the prosecution of this action. Even though HJL filed its settlement proposal after the termination, the Government argues that because the settlement proposal was not submitted until February 10, 2010, over ten months after the execution of the release, this time lapse

precludes HJL from arguing that negotiations continued post-release. Therefore, argues the Government, its motion for summary judgment must be granted in its favor.

HJL counters, however, that the time lapse is of no moment because it filed its settlement proposal within the time specified in FAR 52.249-2. Specifically, FAR 52.249-2 states:

> Termination for Convenience of the Government (Fixed-Price).
>
> (e) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer. The Contractor shall submit the proposal promptly, but no later than 1 year from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 1-year period. However, if the Contracting Officer determines that the facts justify it, a termination settlement proposal may be received and acted on after 1 year or any extension. If the Contractor fails to submit the proposal within the time allowed, the Contracting Officer may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined.

FAR 52.249-1(e). Thus, HJL concludes the settlement proposal must be considered by the contracting officer because 1) it is timely and 2) the release was not final. Accordingly, the Court notes that the settlement proposal itself was timely filed. The question remains what is the effect of the release on the timely filed settlement proposal.

HJL relies on *Raytheon* to support its position that the conduct of the parties post-release made plain that the parties never construed the release as abandonment of the claim. In support, HJL turns to the termination for convenience letter, dated April 6, 2009. In that letter, the contracting officer plainly states:

> (h) Administrative. The contract administration office named in the contract will identify the Contract Officer who will be in charge of the settlement of this termination and who will, upon request, provide the necessary settlement forms. Matters not covered by this notice should be brought to the attention of the undersigned.

DA 67. This language, according to HJL, clearly indicates that settlement costs were to be handled separately. And, as instructed, four days later, on April 10, 2009, HJL requested the settlement proposal form. The form was then transmitted to HJL, eighteen days later. DA 69-70. More communication occurred on February 24, 2010, when HJL contacted GSA and again requested another settlement proposal form. DA 81. Two days later, on February 26, the contracting officer communicated to HJL that GSA viewed the May 6, 2009 release as a final release which closed out the project. *Id.* Mr. Lyness communicated again to the contracting officer and objected to this view by email. *Id.*; Aff. Ex. Z. Then, on March 17, 2010, HJL timely submitted its settlement proposal to the contracting officer on the standard form as

required by the Federal Acquisition Regulation ("FAR").  DA 85-90.  According to HJL, these communications were post-termination and are evidence that HJL never abandoned its claims.  Therefore this evidence, avers HJL, creates a genuine issue of material fact exists precluding summary judgment.  The Court agrees.  The evidence submitted by affidavit shows HJL's continued negotiations regarding the settlement costs after execution of the release.  This evidence may be sufficient to show that its claims for settlement costs are not barred.  Therefore, summary judgment cannot be granted as a genuine issue of material fact exists with regard to this issue.

Not relying solely on *Raytheon*, HJL argues that a prior course of dealing between the parties may also demonstrate that an explicit requirement of the contract is not binding because the contract requirement was not enforced in the past.  *Gresham & Co., Inc. v. United States*, 200 Ct. Cl. 92 (1972).  Thus, HJL avers that the prior course of dealing shows that the release does not constitute the final agreement of the parties on the subject.  The prior conduct of the parties may support a finding that the doctrines of waiver or estoppel bar the operation of the general release and a party may be prevented from enforcing an explicit contract requirement if in its prior dealings it did not require compliance with the contract requirements.  *North Star Alaska Housing Corp. v. United States,* 76 Fed. Cl. 158, 194 (2007) *citing Sperry Flight Systems v. United States,* 548 F.2d 915 (Ct. Cl. 1977).  In response, the Government argues that HJL is attempting to use an alleged course of dealing to rewrite the release to suit its purposes, rather than applying the plain terms of the release.  *See, e.g., Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004) (noting that "[e]vidence of the parties' course of dealing" cannot be used to alter a contract); *Alves v. United States*, 133 F.3d 1454, 1459 (Fed. Cir. 1998) ("[An] attempt to vary the clear meaning of [an] agreement in accordance with the parties' 'course of dealing' is improper under the parol evidence rule."). According to the Government, under this case law, HJL's attempt to use "course of dealing" to limit the scope of the release should be rejected.

It is true that unconditional release provided at the time of final payment generally operates to bar all claims not expressly reserved, thus precluding parol evidence.  However, that is not what HJL is arguing.  Instead, HJL is arguing that it and GSA believed the May 6 release to be a limited release signed in connection with the third pay application, for payment of work performed on a change order.  *See generally* Affidavit of Harry J. Lyness, dated August 8, 2014.  In support of this, HJL argues that there is evidence that the parties did not regard any of the Release of Claims forms contained in all the pay applications as requests for final payment.  *Id*.  HJL argues that GSA required that the form be signed by Plaintiff regardless of the fact that none of the pay applications were requests for final payment.  *Id*.  HJL also points out that the project continued after the submission and payment of the first two pay applications, both of which contained the identical release forms, and which were obviously not related to requests for final payment.  *Id*.  With regard to the third pay application, which also contained the release language, HJL argues it was submitted to GSA for review on March 2, 2009, a month prior to the termination for convenience notice was issued.  *Id*. at Ex. T (Email sent to Bryon Durham of GSA from HJL transmitting the third pay application).  It is, therefore, HJL's contention that it regarded and treated the third pay application the same as it did the other two pay applications.  This course of conduct, HJL argues, demonstrates that the release of claim forms was not a final release.

The Court finds that through the affidavit provided by Mr. Lyness, the parties' actions and course of conduct in this case creates a genuine issue of material fact regarding whether the release constituted a full and final release of claims given in exchange for a final payment, or was simply a routine payment application form that was used with respect to all applications for partial payments requested by HJL. The evidence thus far shows that indeed the form was used in conjunction with all three pay applications. The evidence also shows that the work continued after the first two pay applications were submitted, and according to HJL, work continued after the third pay application was submitted, which was *prior* to the termination for convenience. These facts give rise to a genuine issue of material fact and are enough to defeat a motion for summary judgment at this time. Therefore, this issue must be resolved at trial.

Finally, HJL argues that a contracting officer's knowledge or imputed knowledge that a contractor maintained a right to additional compensation may prevent a final release from operating as a bar to the claim. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed. Cir. 1987). In support, HJL has submitted other evidence supporting its contention that the contractor knew of a right to additional possible compensation. For instance, on November 28, 2008 and March 16, 2009, HJL made requests for equitable adjustment. In the correspondence dated March 30, 2009, GSA denied the first request specifically instructing HJL to submit a "complete final request with all supporting documentation." DA 64. This, HJL argues, reflects GSA's and HJL's continued negotiations over the equitable adjustments. Therefore, this evidence creates a genuine issue of material fact and, therefore, summary judgment cannot be granted and must be resolved at trial.

The Government rejects this argument and argues that *Mingus* does not stand for such a broad proposition. Instead, it argues that *Mingus* reiterates that a contractor must specify, on the release form, any claims that it wishes to exempt from the scope of the release. 812 F.2d at 1393-94. ("[T]he burden . . . is on the contractor to make adequate exceptions on the release form prior to receiving final payment in order to preserve his claims."). In this case, argues the Government, though the release contained space for HJL to exempt specified claims, HJL did not do so, despite the release post-dating the termination for convenience. By not doing so, the May 6 release bars HJL's claims in this lawsuit, all of which arise out of the April 6 termination for convenience.

Contrary to the Government's assertion, the Court again finds that a genuine issue of material fact exists and summary judgment cannot be granted on this issue. On at least two dates, HJL made requests for equitable adjustments. GSA denied one request indicating to HJL that the adjustment was a partial request and that in order to be considered HJL was to submit a final request. This can be evidence that GSA knew HJL would be submitting a final request for equitable adjustment. This evidence shows that a genuine issue of material fact exists with regard to this issue as well which must be resolved at trial.

**V.      Conclusion**

Therefore, in light of this opinion, the Court DENIES-IN-PART Defendant's Cross-Motion for Summary Judgment and holds in abeyance Plaintiff's Motion for Partial Summary Judgment.

The parties are directed to file a joint status report within 21 days from the date of this opinion outlining the next steps to be taken in this litigation.

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge